**Justin Galvez**
UT Bar # 15602
**MORGAN & MORGAN, P.A.**
222 S. Main Street, Suite 537
Salt Lake City, UT 84101
Ph: (689) 216-7762
Fax: (689) 216-7812
jgalvez@forthepeople.com

**Andrew R. Frisch**
FL Bar No. 027777 (*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
Email: AFrisch@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719 (*seeking admission pro hac vice*)
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| ORION LYMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH<br><br>        Defendant. | **ORIGINAL COLLECTIVE ACTION COMPLAINT**<br><br>**Case No.** _____<br>FLSA Collective Action<br><br><br>Jury Trial Demanded |

## SUMMARY

1. Like many other employer across the United States, the Univesity of Utah's (the "University") Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2. That outage led to problems in timekeeping and payroll across the University's system.

3. As a result, the University's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the onset of the Kronos outage.

4. Orion Lyman is one such worker for the University.

5. The University's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6. Lyman worked for the University during the Kronos outage and was affected by these pay practices—just like the University's other nonexempt workers.

7. This action seeks to recover the unpaid wages and other damages the University owes Lyman and these all these workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal law.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

10. Lyman worked for the University in this District.

## PARTIES

11. **Plaintiff Orion Lyman** is a natural person.

12. Lyman was, at all relevant times, an employee of the University.

13. Lyman worked for the University during the Kronos outage.

14. Lyman represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of the University who worked at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, until the time that the University regained full access to all Kronos products and services, and resumed normal employee timekeeping and payment operations.**

15. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

16. **Defendant University of Utah (the "University")** may be served by service upon **State of Utah, Office of the Attorney General, 160 East 300 South, 6th Floor, Salt Lake City, UT 84101**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

17. At all relevant times, the University was an employer of Lyman within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all relevant times, the University was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. The University was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. During at least the last three years, the University has had gross annual sales in excess of $500,000.

21. The University was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

22. The University employs many workers, including Lyman, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

23. The goods and materials handled, sold, or otherwise worked on by Lyman and other University employees and that have been moved in interstate commerce include, but are not limited to, computers, office supplies, and telecommunication equipment.

## FACTS

24. Many Unjiversity employees are non-exempt hourly and salaried workers.

25. Since at least 2021, the University has used Kronos timekeeping software.

26. On or about December 11, 2021, the Kronos system suffered a disruption in service due to a ransomware attack.

27. The Kronos outage interfered with the ability of Kronos users, including the University, to use Kronos to track hours and pay employees.

28. For at least a portion of time following the Kronos hack, the University failed to accurately track the hours that Lyman and Similarly Situated Workers worked.

29. For at least a portion of time following the Kronos outage, the University failed to correctly pay Lyman and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

30. Instead, the University used various methods to estimate the number of hours Lyman and Similarly Situated Workers have worked in each pay period.

31. As a result of the University's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

32. As a result of the University's failure to accurately pay non-exempt employees the hours that they reported each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

33. Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

34. Lyman is one of the many University employees affected by these pay and timekeeping practices.

35. Lyman regularly worked over 40 hours per week for the University.

36. Lyman worked for the University for 40 hours, or more, during one or more workweeks during the Kronos outage.

37. But Lyman was not paid the proper overtime premium for all hours worked on time, if at all, for each of those weeks after the onset of the Kronos service disruption, on or about December 11, 2021.

38. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2)

the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

39. The University knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

40. The University knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

41. The University could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

42. But the University did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and at the regular rates at which they were supposed to be paid.

43. It was feasible for the University to put in timekeeping and pay systems during the Kronos outage so that employees could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

44. But the University failed to put a competent system in place to ensure that happened.

45. In other words, the University pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than taking steps to make sure its employees were paid on time and in full for the work they did.

46. An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. *Cahill v. City of New Brunswick*, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

47. Yet, in the wake of the Kronos outage, that is exactly what the University did.

48. Lyman is just one of the many front-line employees who had to shoulder the burden of this decision by the University.

49. Lyman is just one of the many University employees who had to shoulder the burden of the University's timekeeping and payroll policies and practices.

50. Lyman was a non-exempt hourly employee of the University.

51. Lyman regularly worked over 40 hours per week for the University.

52. Lyman's normal, pre-Kronos outage hours are reflected in the University's records.

53. Lyman regularly worked over 40 hours per week for the University on one or more workweeks during payroll cycles affected by the Kronos outage.

54. In payroll cycles affected by the Kronos outage, the University did not timely pay Lyman and Similarly Situated Workers for their actual hours worked each week.

55. In payroll cycles affected by the Kronos outage, the University did not accurately record the hours worked by Lyman and Similarly Situated Workers, in multiple workweeks.

56. The University was aware of the overtime requirements of the FLSA.

57. The University nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Lyman.

58. The University nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Lyman.

59. The University's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

60. The full overtime wages owed to Lyman and the Similarly Situated Workers became "unpaid" when the work for the University was done—that is, on Lyman and the Similarly Situated Workers' regular paydays. *See, e.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

61. At the time the University failed to pay Lyman and the Similarly Situated Workers in full for their overtime hours by their regular paydays, the University became liable for all liquidated damages and any other damages owed under federal law.

62. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

63. Any payment made by the University to Lyman or the Similarly Situated Workers that the University may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

64. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

65. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to the University's acts and omissions resulting in the unpaid wages in the first place.

66. Lyman and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by the University under federal law.

### COLLECTIVE ACTION ALLEGATIONS

67. Numerous individuals were victimized by the University's patterns, practices, and policies, which are in willful violation of the FLSA.

68. Based on his experience and tenure with the University, Lyman is aware that the University's illegal practices were imposed on the FLSA Collective.

69. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

70. These employees are victims of the University's respective unlawful compensation practices and are similarly situated to Lyman in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

71. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

72. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

73. The University's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

74. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA

75. Lyman incorporates each other allegation.

76. By failing to pay Lyman and the FLSA Collective members overtime at 1.5x their regular rates, on time and in full, the University violated the FLSA. 29 U.S.C. § 207(a).

77. The University owes Lyman and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

78. The University owes Lyman and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

79. Likewise, the University owes Lyman and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

80. The University knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Lyman and the Collective members the compensation owed to them under the FLSA.

81. Because the University knew, or showed reckless disregard for whether, its pay practices violated the FLSA, the University owes these wages for at least the past three years.

82. The University's failure to pay compensation owed under the FLSA to Lyman and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

83. Because the University's decision not to pay overtime was not made in good faith, the University also owes Lyman and the Collective members an amount equal to the unpaid wages as liquidated damages.

84. Accordingly, Lyman and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

**RELIEF SOUGHT**

Lyman prays for judgment against the University as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding the University liable for violations of federal wage laws with respect to Lyman and the FLSA Collective members;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Lyman and the FLSA Collective members;

d. For an equitable accounting and restitution of wages due to Lyman and the FLSA Collective members;

e. For a judgment awarding costs of this action to Lyman and the FLSA Collective members;

f. For a judgment awarding attorneys' fees to Lyman and the FLSA Collective members;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Lyman and the FLSA Collective members; and

h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Justin Galvez*
_____
**Justin Galvez**
UT Bar # 15602
**MORGAN & MORGAN, P.A.**
222 S. Main Street, Suite 537
Salt Lake City, UT 84101
Ph: (689) 216-7762
Fax: (689) 216-7812
jgalvez@forthepeople.com

**Andrew R. Frisch**
FL Bar No. 027777
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013

Email: AFrisch@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

# JURY DEMAND

Lyman demands a trial by jury on all issues.

*/s/ Justin Galvez*

**Justin Galvez**